IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DOUGLAS ALAN DAVIDSON, JR. and KACY NICKELL DAVIDSON, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 190361R and TC-MD 200279R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Assessment, dated September 25, 2019, for the

2014 tax year and Defendant's Notice of Assessment, dated March 11, 2020, for the 2015 tax

year. A consolidated trial was held on March 30 to April 1, 2022, in the courtroom of the

Oregon Tax Court. Kevin O'Connell and Joe O'Connell, both of Hagen O'Connell & Hval LLP,

appeared on behalf of Plaintiffs. Douglas Davidson, Jr. (Douglas), Kacy Davidson (Kacy), and

Michael Townsend (Townsend), President of Northwest Tax Advisors, testified on behalf of

Plaintiffs.[1] James C. Wallace, Senior Assistant Attorney General, and Patrick L. Rieder,

Assistant Attorney General, appeared on behalf of Defendant. Michelle Warren (Warren), senior

auditor for the Oregon Department of Revenue, testified on behalf of Defendant and as an

adverse witness for Plaintiffs. Plaintiffs' Exhibits 1 to 17 and 19 were admitted into evidence.

Defendant's Exhibits A to F and I to Q were admitted into evidence.

///

///

---

[1] The court customarily refers to individuals by their last name, however, the court uses Plaintiffs' first names to avoid confusion.

## I. FACTUAL OVERVIEW

Given the complexity of the circumstances leading to this appeal, this factual overview serves merely as a general introduction to the case and its subject matter. The court introduces additional—and more specific—facts in the analysis section of this Decision.

On December 3, 2019, and June 15, 2020, Plaintiffs filed complaints challenging Defendant's adjustments to their 2014 and 2015 personal income tax returns, respectively. Defendant's adjustments at issue in this Decision primarily concern income and expenses related to Douglas' home construction business.

In 1996, Douglas started his own home construction business, which operated as "Douglas Davidson Jr. [doing business as] Edgefield Homes" until 2015, when he formed Edgefield Homes and Development LLC (Edgefield Homes).[2] (Ex 7 at 2; *see also* Ex E at 2284.) Also in 2015, Douglas formed an additional business, Edgefield Aviation, LLC, which transported logs by helicopter as a service for third parties. (Ex E at 1989.) At trial, Douglas testified that he had trouble keeping employees, and that he took care of many of his businesses' responsibilities himself, including completing various administrative tasks. Douglas' businesses eventually grew to be successful and sophisticated; however, his bookkeeping and accounting systems did not.

Douglas kept track of his businesses' income and expenses using a handwritten checkbook register. He kept invoices paid in a large tub—only some of which identified the corresponding job site or project. He recorded transactions using the cash method of accounting,

---

[2] Although Plaintiffs' exhibits indicate Douglas' home construction business operated as Douglas Davidson Jr. doing business as Edgefield Homes until 2015, Defendant notes that "Edgefield Homes was registered as an assumed business name for Doug Davidson on April 23, 2008[,] and operated as a sole proprietor[ship]." (*See, e.g.*, Ex 7 at 2; *see also* Ex E at 1989.)

even though some of his projects should have been expensed, treated as costs of goods sold (COGS), and costs deducted only when the projects were completed. [3] Although Defendant argues Plaintiffs' exclusive use of the cash method of accounting was at times improper, at trial, Defendant generally agreed to waive this argument, with minor exceptions as noted in this Decision.

The circumstances leading to this appeal—circumstances relevant to both tax years at issue—are elaborated upon in the following subsections.

A.      *Construction of Plaintiffs' Home*

In May of 2005, Plaintiffs purchased an 80-acre parcel on Southeast Nelson Road located in Sandy, Oregon, for $200,000 (Nelson Road property).[4] (Ex E at 9, 2396.) Plaintiffs intended to develop the Nelson Road property as their primary residence, work storage facilities, and an office. Douglas first constructed approximately 30,000 square feet of business-related structures on the property. (Ex E at 9.) He went on to construct Plaintiffs' residence over a period of several years, obtaining a certificate of occupancy and moving in on December 24, 2014.

Defendant alleges Plaintiffs attempted to deduct the expenses incurred in building their personal residence as business expenses on their 2014 and 2015 personal income tax returns. At trial, Douglas estimated the cost of construction for the home totaled $500,000. He testified that he primarily built the home himself but was occasionally aided by friends or contractors. Douglas paid invoices related to construction of the Nelson Road property from a business

---

[3] "Under the cash method, you generally report income in the tax year you receive it, and deduct expenses in the tax year in which you pay the expenses." Accounting Periods and Methods, IRS Pub No 538 at 1, Cat No 15068G (Feb 14, 2022), https://www.irs.gov/pub/irs-pdf/p538.pdf. Under the accrual method, when a contractor builds a home on land they own, they can deduct expenses only when the project is sold, regardless of when payment is made. *Id*.

[4] Dollar amounts referenced in this Decision are rounded to the nearest whole number.

account and credit cards that were paid from a business account. He testified that he had previously loaned Edgefield Homes money from the sale of his prior personal residence, so in his view, using business funds to pay for the construction of his home was a form of repayment on the loan. Douglas did not submit evidence substantiating the alleged loan. Douglas argued that although numerous invoices submitted into evidence contained the Nelson Road address, they were not necessarily invoices for construction of his personal residence, noting that his business office is in his home. At trial, Plaintiffs unilaterally conceded they improperly deducted as business expenses $141,106 and $72,672 in COGS incurred for the construction of their home for tax years 2014 and 2015, respectively. (*See* Ex E at 2279-81.)

B.      *Plaintiffs' Tax Preparer*

Townsend testified that he prepared Plaintiffs' tax returns from 2012 through 2018. In doing so, he relied primarily upon Plaintiffs' checkbook register, but also reviewed their bank statements. Townsend observed that Plaintiffs' personal credit card bills were paid with business funds; however, he assumed the expenses were for work-related construction projects or materials.

Aware of concerns regarding the proper method of accounting to use, at one point, Townsend and Kacy discussed the possibility of adopting a new accounting method; they ultimately decided that having been audited multiple times before, it would be acceptable to continue using the cash basis of accounting.

///

///

///

///

In relation to the issue of accounting method, Townsend amended Plaintiffs' 2014 tax return, and included the following explanation of changes made to the original return:

> "Taxpayer built and sold a home in 2014 located on Bonney [Road]. The original land was purchased [and] inventoried in 2013. The property was not added to the cost of goods sold on the 2014 tax return. This land cost was $300,000 and was added on the COGS under other [construction] costs."

(Ex D at 1095) (capital letters removed.)

In 2015, Edgefield Homes received $100,050 and deposited the full amount into its bank account. (Am Ans at 6.) Townsend originally included that amount as income, but later removed it on instructions from Douglas who stated the deposit was potentially refundable and therefore, should not be included in gross income. Defendant requests the court include the full deposit amount as gross income.

C.    *Defendant's Audit*

Warren testified she is a senior auditor with 14 years of experience working for Defendant. She became acquainted with Plaintiffs in 2006, after their tax return was audited by the Internal Revenue Service. Warren has since audited Plaintiffs' income tax returns for the 2009 to 2017 tax years.

Warren opened Plaintiffs' audit for the 2014 tax year in September 2016. She sent Plaintiffs an initial letter requesting documentation to substantiate their deductions in December 2016. After Plaintiffs failed to respond Warren sent Plaintiffs her initial audit report, dated May 16, 2017, disallowing all expenses deducted. In subsequent months, documents substantiating business expenses were provided to Warren from Plaintiffs on a piecemeal basis.

In late 2017, Warren became aware that Plaintiffs had built a large personal residence—approximately 17,000 square feet—on the Nelson Road property. She did not readily observe any payments associated with the construction from Plaintiffs' personal financial records; that,

along with Warren's knowledge from prior experience that Plaintiffs had repeatedly deducted personal expenses as business expenses on their tax returns since 2009, led her to form a hunch that Plaintiffs might have paid for construction of the residence using business funds.

Warren requested information about the expenses for the construction of the residence, orally and in writing, but she did not receive a response from Plaintiffs. She proceeded to review information about the Nelson Road property on the Clackamas County Assessor's website and observed the assessor had increased the real market value of the property for the 2014-15 tax year from $333,912 to $952,057. (*See* Ex E at 17.) She similarly observed an increase in the tax roll real market value for the 2015-16 tax year from $952,057 to $2,109,978. (*See id*. at 18.) Warren surmised that the increases to the real market value and tax roll value for the Nelson Road property were due to the construction of their home on the property.

When Plaintiffs again did not respond to her request for information, Warren estimated the increase in value, as shown on property tax records, at $1,961,180. She used that figure as an estimated cost of the improvements, divided it in half, and allocated one half each to tax years 2014 and 2015.

Warren issued her final audit report in March 2018. (Ex D at 1298-1307.) She stated in her report, "[y]ou will need to provide documentation to show that these expenses were not included in the business expenses claimed and were paid for separately from your business expenses." (*Id*. at 1302.) Plaintiffs did not acknowledge that costs to build their personal home were deducted as business expenses until a February 22, 2019, letter from their attorney admitted that fact. They did not provide documentation regarding the Nelson Road expenses until just before trial and only after several motions to compel the production of documents and to compel a site visit of the Nelson Road property were granted by the court.

At trial, Plaintiffs offered concessions on amounts they expended building their personal residence that had been deducted as business expenses totaling almost $214,000. Warren did not believe the figure was accurate because she did not see sufficient invoices for flooring and other items she believed necessary to build the home. Additionally, she observed a large quantity of rocks and asphalt at the location, but bills for those types of items were not identified for the residence. Warren believed Plaintiffs' concessions were insufficient.

## II. ANALYSIS

At issue in this case are whether (1) Defendant's Notices of Assessment (NODA) were issued in good faith and (2) whether Defendant's adjustments, primarily concerning the disallowance of numerous deductions for expenses claimed by Plaintiffs, should be adjusted or sustained.

A.      *Whether the NODAs Were Issued in Good Faith*

Plaintiffs argue the NODAs are invalid because they were not issued in good faith, citing *Preble v. Department of Revenue*, 331 Or 320, 14 P3d 613 (2000). In *Preble*, this court considered "whether a notice of tax deficiency may be valid even though it was not certified, as required by [ORS 305.265(2)(c)]."[5] *Id*. at 322; *see* ORS 305.265(2) ("[T]he notice [of deficiency] shall: * * * [b]e certified by the department that the adjustments are made in good faith and not for the purpose of extending the period of assessment"). Upon analysis of the text and context of ORS 305.265, the court found that the legislature's use of the word "shall" in the statute indicates that "certification [is] a necessary condition for a valid notice of deficiency." *Preble*, 331 Or at 325. Thus, the court found the notices of deficiency at issue invalid because they did not contain the statutorily required certificates. *Id*. at 326.

---

[5] References to the Oregon Revised Statutes (ORS) are to the 2013 version.

Plaintiffs argue *Preble* requires that Defendant do more than make a mere statement that the audit was conducted in good faith; rather, Plaintiffs argue Defendant must present substantive evidence that the NODAs were issued in good faith. This court has previously held that the good faith requirement is substantive; that is, "good faith" requires a component of honesty and integrity. *See Enyart v. Dept. of Rev.*, TC-MD 150446N, 2016 WL 4944265 at *5-6 (Or Tax M Div, Sept 15, 2016). In *Enyart*, the court considered whether the Department of Revenue issued a notice of deficiency "in good faith and not for the purpose of extending the period of assessment under ORS 305.265(2)(c)." *Id*. at *3 (internal quotation marks omitted). The court found that the auditor issued a proposed audit report and gave the taxpayer a deadline to respond. *Id*. at *1. The taxpayer timely responded but the auditor asserted he did not have sufficient time to review the documentation because of a planned vacation. *Id*. at *2. He issued the notice of assessment without reviewing the documents. *Id*. at *7. The court concluded that the notice of assessment was "not made in good faith because the auditor made the adjustments despite knowing of circumstances requiring further investigation and because the auditor failed to undertake that investigation by considering documentation timely submitted by Plaintiffs." *Id*. at *9.

In this case, Plaintiffs take issue with the auditor's disallowance of deductions for improvements to their home as COGS expenses—a computation based on an estimate from the county assessor's property tax records for the 2014-15 and 2015-16 tax years. That disallowance resulted in an addition of nearly two million dollars to Plaintiffs' taxable income. Plaintiffs argue these were "punitive adjustments" and thus, not made in good faith. (*See* Ptfs' Closing Arg Mem at 3.) They further argue that while the auditor agreed to waive challenges to Plaintiffs' use of the cash method of accounting, her efforts to match invoices and receipts with

construction projects served to "disallow legitimate business expenses." (*Id*. at 4.) Finally, before trial Plaintiffs conceded more than $200,000 of construction items that went into their personal residence and in their view, "that is the level at which this case should be resolved." (*Id*. at 5-6.)

The court readily observes that the type of adjustment made by the auditor with respect to construction of Plaintiffs' personal residence is unusual. Part of the computation of the estimate the auditor made using county tax records was clearly in error because the date of assessment for the 2014-15 tax year is, by statute, January 1, 2014; meaning, the increase in value due to construction occurred in 2013 and thus, the auditor relied upon the wrong tax year. *See* ORS 308.007; ORS 308.210. Despite the unusual nature of the adjustment and the auditor's error of using the wrong year of county tax records, the court does not agree that the auditor's adjustments were made in bad faith.

Warren observed that Plaintiffs were regularly and systemically paying virtually all of their credit card bills and personal expenses by business checks, which were then deducted as business expenses on their returns. Further, Warren did not find any significant personal payments for construction on their residence despite county records which revealed substantial improvements had taken place. Warren reasonably surmised that Plaintiffs might have been deducting costs for the construction of their home as business expenses. She then asked for documentation from Plaintiffs to support her theory, and only after Plaintiffs did not provide any information, Warren estimated the costs. Rather than viewing Warren's actions as taken in "bad faith[,]" the court views her conduct as the type of action that should be expected of a dutiful tax auditor. She may have used incorrect data to calculate the amount of construction costs, but she used her best efforts to make an estimate after Plaintiffs refused to provide information she

requested. Plaintiffs did not disclose their deduction of expenses to build their residence until early 2019, and even then, they represented an amount that was wildly understated at $106,711.87. (Ex D at 2.)

Contrary to Plaintiffs' assertion, Warren's insistence on obtaining evidence of COGS for each property was not an effort to change Plaintiffs' type of accounting. Rather, in the face of records that were so poorly maintained, she spent years trying to tease out costs to verify which expenses were business related. Plaintiffs argued that the proper method of determining their taxable income should have been to take their deposits as gross income less the checks they wrote as expenses, and the result would be their net income from the business. If Plaintiffs only wrote checks for business expenses, Defendant and the court might have been persuaded to follow that method. However, Plaintiffs chose to make substantial payments using checks from the business accounts to pay for obvious personal expenses. They then failed to comply with informal requests for information, and Defendant was forced to seek multiple orders from the court to compel production of documents and for a site inspection. The court therefore does not find any merit in Plaintiffs' argument that Defendant's Notices of Assessment were issued in bad faith.

B.      *Defendant's Adjustments*

The remaining issues are whether Defendant's adjustments, primarily concerning the disallowance of expenses, should be adjusted or sustained.

1.      *General statements of law*

In analyzing Oregon income tax cases, the court starts with several guiding principles. First, the federal Internal Revenue Code (IRC) applies because the ORS defines taxable income by reference to the IRC. *See* ORS 316.022(6); 316.048. Second, in cases before the court, the

party seeking affirmative relief bears the burden of proof and must establish their case by a "preponderance" of the evidence. ORS 305.427. Third, deductions are a "matter of legislative grace" and the burden of proof—substantiation—is placed on the individual claiming the deduction. *INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992). Fourth, IRC section 162 generally allows a deduction for "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" *See* IRC § 162(a). However, a taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. *See* IRC § 6001; Treas Reg § 1.6001–1(a).

2. *Specific adjustments*

The following subsections address each of the disputed adjustments individually.

a. Advertising expenses

Plaintiffs deducted hunting and fishing trips in 2014 and 2015 as advertising expenses. On April 1, 2014, Douglas paid $12,000 to Besa River Outfitters as a payment for a hunting trip. (*See* Ex D at 1; *see also* Ex 1 at 6.) Douglas testified the hunting trip was with a representative of Swift Performance LLC, whom Edgefield Homes did business with. Plaintiffs assert that taking a potential client on a hunting trip was an advertising expense because Douglas and his guest "talked about business." Douglas' tax preparer, Townsend, advised Douglas that the trip was too expensive to be deducted as a business expense, but ultimately agreed to include it on Plaintiffs' tax return at Douglas' insistence. Likewise, Plaintiffs reported $20,638 in advertising expenses in 2015. At audit, Warren reduced the amount allowed by $18,500 for two hunting trips: (1) a $1,200 expense for "Fish On Extreme" and (2) a $17,300 expense for "Besa River Outfitters." (*See* Ex 2 at 16, 19.)

///

Generally, advertising expenses are deductible as ordinary and necessary business expenses in the year paid under IRC section 162(a). *See Hills v. Dept. of Rev.*, 2012 WL 407167 at *5 (Or Tax M Div Feb 8, 2012) ("As a general proposition, advertising is a common expense incurred by businesses * * *. Reaching as many potential customers in a business' target market as possible is crucial to successful advertising"). However, hunting and fishing are generally considered entertainment activities, not advertising. *See Austin Otology Assocs. v. Comm'r*, 106 TCM (CCH) 710, 2013 WL 6847361 at *4 (2013). Expenses incurred in relation to entertainment activities are deductible only if they are "directly related to the active conduct of [Plaintiffs'] trade or business." *Id*. at *5 (internal quotation marks, ellipses, and citation omitted); *see also* IRC § 274(a)(1)(A).

In *Austin Otology*, the court stated:

"Section 1.274–2(c)(3), Income Tax Regs., provides that an expenditure shall be considered directly related to the active conduct of the taxpayer's trade or business if it satisfies each of four requirements:

"(1) the taxpayer must have had more than a general expectation of deriving some income or other business benefit at an indefinite future time;

"(2) during the entertainment period, the taxpayer must have engaged in a bona fide business transaction, other than entertainment, for the purpose of obtaining such business benefit;

"(3) the principal character of the combined business and entertainment was the active conduct of the taxpayer's trade or business; and

"(4) the expenditure was allocable to the taxpayer and a person or persons with whom the taxpayer engaged in the active conduct of trade or business during the entertainment."

*Austin Otology*, 2013 WL 6847361 at *5 (footnote omitted).

Plaintiffs did not provide any evidence with respect to any of the four points cited in Treasury Regulation section 1.274–2(c)(3). Douglas indicated he only had a general expectation

of future business from his guest and that no bona fide business transaction occurred. A hunting trip is not at all connected with Plaintiffs' home construction business. Douglas had only the remote possibility of future business. Accordingly, Defendant's adjustments disallowing Plaintiffs' advertising expenses for the 2014 and 2015 tax years are sustained.

        b.     2014 gross receipts

Douglas' father, Douglas Davidson, Sr., loaned Edgefield Homes $250,000 on March 7, 2014. (Ex 11 at 4.) Douglas testified that the loan was for the purchase of property located on Fernwood Drive in Eagle Creek, Oregon. Douglas purchased the Fernwood property in his own name on March 14, 2014, for $261,234. (*Id*. at 5.) Later, he accepted $120,000 as a down payment from a buyer who contracted to have a home built on the property. On July 29, 2014, Douglas executed a Bargain and Sale Deed to Davidson Development LLC, a company owned by Douglas' father. (*Id*. at 7.) The deed provides that $258,973 in "true consideration" was paid. (*Id*.) However, neither Douglas' father nor his company ever paid that consideration. Although Douglas testified that he wanted to provide security to his father because the March 7, 2014, loan was unsecured, Kacy, in response to a discovery request, reported that the deed was actually executed because Plaintiffs were concerned about the possibility of a federal tax lien being imposed upon them. Douglas logged the property and earned $178,719 for doing so. He went on to build a home on the property, the deed for which stating it was sold by Davidson Development for $600,000 on December 8, 2014. (*Id*. at 9.) The escrow settlement statement confirms that $120,000 had previously been paid to Douglas as a down payment, and after deducting some fees, indicates a balance of $479,428 due to Davidson Development. (*Id*. at 19.)

///

///

Davidson Development paid Edgefield Homes the sum of $179,428, on December 8, 2014, which Douglas testified was the balance due after repaying the $250,000 loan and a $40,000 loan fee. (*Id*. at 13.)

Defendant asserts Edgefield Homes had an additional $300,000 in gross unreported receipts from the sale of the Fernwood property in 2014. The court does not agree. While the transfer of the property from Douglas to his father (Davidson Development) and the eventual sale from Davidson Development was atypical, it is undisputed that no funds ever changed hands for the transfer. The resulting accounting, disregarding the transfer, shows a purchase of the Fernwood property for $261,233 and sale for $600,000, leaving a balance of approximately $300,000 in net proceeds. Leaving aside the proceeds from logging that were separately accounted for, Douglas showed deposits for Fernwood in the amounts of $120,000 (down payment) and $179,428 (payment from Davidson Development after paying the loan and its corresponding fee), totaling approximately $300,000. The court is not persuaded that Plaintiffs had additional gross receipts. Plaintiffs' gross income should not be increased by $300,000 based on the sale of the Fernwood property.

        c.      2015 gross receipts

Plaintiffs reported gross receipts for Edgefield Homes for the 2015 tax year in the amount of $2,075,651. At audit, Warren found that three deposits in December totaling $100,050 had not been added to the yearly total. Plaintiffs presented no evidence at trial to challenge Warren's finding. Therefore, the court finds that Plaintiffs' gross receipts for the 2015 tax year were $2,175,701.

///

///

d.    IRC section 179 deductions

In 2014, Plaintiffs took an IRC section 179 deduction on a number of items totaling $428,908.  (*See* Ex 8 at 37; Ex 8 at 24; Ex D at 1309.)  Defendant denied deductions for two items: a 2015 GMC Yukon Denali (GMC) purchased in April 2014 for $74,825, and a 2014 Ford F-150 (Ford) purchased in February 2014 for $42,083.  (Ex 8 at 37.)  Plaintiffs testified that Kacy drove the GMC for family use, for use as a real estate broker, and to sometimes assist Edgefield Homes in obtaining supplies or to help out in an emergency.  The GMC had a sign advertising Edgefield Homes on the back window.  Kacy did not keep a log of her mileage for the years in issue.  Douglas testified that he used the Ford exclusively for work and had a number of other non-work vehicles available for personal use.  He also did not maintain a log of his mileage.

IRC section 179 allows a taxpayer to elect to immediately expense, as a deduction, the cost of any section 179 property for the taxable year in which the property is placed in service.  Section 179 property is defined as any property acquired by purchase for use in a trade or business.  IRC § 179(d)(1)(C).  If the property is used for both business and personal purposes, then the portion of the costs attributable to its business purpose is deductible under section 179, but only if the predominant use test is met.  *See* Treas Reg 1.179-1(d); *see also Benavides & Co., P.C. v. Comm'r*, 118 TCM (CCH) 221, WL 4257012 at *9 (US Tax Ct 2019).  The predominant use test is satisfied if 50 percent or more of the property's use is for business purposes during any taxable year within the recapture period.  *See* Treas Reg 1.179-1(e)(2).

///

///

///

In addition to satisfying the predominant use test, to deduct expenses related to "listed property," a taxpayer must meet the heightened substantiation requirements imposed by IRC section 274(d). Treas Reg 1.274-5T(a)(4). Passenger automobiles are included in the definition of "listed property." IRC § 280F(d)(4)(A)(i), (ii).

IRC section 274(d) provides, in part, that no deduction shall be allowed unless the taxpayer substantiates the (A) amount, (B) time and place of the travel, and (C) business purpose of each use "by adequate records or by sufficient evidence corroborating the taxpayer's own statement[.]" *See also* Treas Reg § 1.274–5T(b)(6). Although a contemporaneous log is not required, "a record of the elements of an expenditure or of a business use of listed property made at or near the time of the expenditure or use" is treated with a high degree of credibility. Treas Reg § 1.274–5T(c)(1). To satisfy the "adequate records" standard, a taxpayer is responsible for maintaining "an account book, diary, log, statement of expense, trip sheets, or similar record, * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure or use * * *." Treas Reg § 1.274-5T(c)(2)(i). If a taxpayer cannot satisfy the adequate records standard, he "may substantiate the elements by other 'sufficient evidence'— generally a combination of the taxpayer's detailed statement and other corroborative evidence for each element." *Okon v. Dept. of Rev.*, TC-MD 220022G, 2023 WL 2495607 at *2 (Or Tax M Div, Mar 14, 2023) (citing Treas Reg § 1.274-5T(c)(3)(i)).

Plaintiffs admitted that Kacy used the GMC for both personal and business purposes. As a result, a section 179 deduction is permissible only if the predominant use test is met. Plaintiffs presented no evidence on the percentage of business use; therefore, they cannot satisfy the test. Plaintiffs' section 179 deduction for their GMC is denied. Their depreciation expenses are accordingly decreased by $74,825.

Douglas testified that he used the Ford exclusively for business use and that he had other vehicles available for personal use. The court finds the testimony persuasive. However, even though Plaintiffs' deduction for the Ford is not subject to the predominant use test, because the Ford is a passenger automobile, it is "listed property" and is subject to the heightened standards imposed by IRC section 274(d). *See* IRC § 280F(d)(4)(A)(i), (ii); *see also* Treas Reg 1.274-5T(a)(4). Douglas did not maintain a mileage log for the use of his Ford truck. His evidence, or lack thereof, is insufficient to satisfy the burden imposed by IRC section 274(d). Thus, Plaintiff's $42,083 section 179 deduction is disallowed.

Additionally, Warren herself increased Plaintiffs' section 179 deduction on their 2015 return to account for certain items that had not been deducted on past tax returns. Plaintiffs did not challenge this item; the court accordingly accepts Warren's adjustment for the items listed.

e.      Insurance

Defendant disallowed Plaintiffs' deductions for insurance expenses. For the period spanning September 2013 to September 2014, Plaintiffs paid premiums for worker's compensation in the amount of $14,481, based on an audited payroll amount of $94,945. (Ex E at 22-24.) The court is persuaded by Douglas's testimony, along with Plaintiffs' documentation of insurance for Douglas Davidson doing business as Edgefield Homes, that Plaintiffs did incur insurance expenses. (*Id*. at 25.) Plaintiffs' deductions for insurance expenses are therefore, allowed.

f.      2014 COGS expenses

Plaintiffs' 2014 return claimed COGS in the amount of $1,537,789. At audit, Warren subtracted $980,590 from Plaintiffs' COGS expenses in accordance with her estimate of expenses incurred in constructing Plaintiffs' home, reducing Plaintiffs' COGS expenses to

$557,199. At trial, Plaintiffs only evidence of their COGS expenses was their check register. However, the register does not provide details as to the business purpose of the items and the register together with the receipts and invoices provided to Defendant were unreconcilable. Further, Plaintiffs regularly deducted personal expenses from their credit card bills and did not persuasively identify those expenses pertaining to the construction of their residence. Except where the tax code specifically says otherwise, taxpayers cannot deduct personal, living, or family expenses. IRC § 262(a). Plaintiffs' concession that expenses were incorrectly deducted by the amounts of $141,106 in 2014 and $72,672 in 2015 was not sufficiently supported or persuasive.

Warren spent more than two years analyzing Plaintiffs' receipts and invoices to determine the precise amount of COGS expenses that could be substantiated. She testified at length to the inadequacy of Plaintiffs' records: receipts and invoices were duplicated, contained certain information related to their personal residence, and certain documents did not identify worksites. Warren's testimony was unflappable, and she provided specific examples of why and how receipts and invoices were applied. Warren determined that, of the amounts claimed in Plaintiffs' 2014 tax return, $1,064,710 was substantiated. The court finds Warren's testimony and documents more persuasive than Plaintiffs' evidence. Thus, the court finds Plaintiffs' COGS for the 2014 tax year was $1,064,710.

///

///

///

///

///

g.      2015 COGS expenses

In 2015, Plaintiffs reported COGS totaling $1,546,975.  At audit, Warren subtracted $980,590 from Plaintiffs' COGS expenses in accordance with her estimate of expenses incurred in constructing Plaintiffs' home.  At trial, Warren revised Defendant's subtraction to be $519,991—the sum of $476,729 in construction costs and $43,262 in personal purchases paid with Edgefield Homes' credit card or checks.

At trial, Warren presented a 31-page accounting based on the receipts provided by Plaintiffs during discovery, with explanations as to which receipts had been allowed and the reasons for those that were not allowed.  At trial, Plaintiffs disputed the process, stating that using Warren's chosen accounting method to reduce the amounts claimed was like comparing apples and oranges.  However, to substantiate a business expense, a taxpayer must not only show the amount paid, but also the business purpose of the expense.  *See* Bittker & Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 20.1.9 (2020).  In the items disallowed in Warren's report, she highlights that some receipts could not be matched to any particular project, and with Plaintiffs spending an unknown amount on their personal home, she put the burden on Plaintiffs to prove what the receipts were for.  Plaintiffs did not present persuasive evidence to the contrary.  Plaintiffs argued, for example, that a number of rock purchases were used in logging projects to build roads, but were unable to provide any specific documentary evidence linking rock sales to specific road-building projects.

When taxpayers prove they have incurred business expenses, but the exact amounts are uncertain, the court can estimate.  *See Cohan v. Comm'r*, 39 F2d 540, 542-44 (2d Cir 1930); *see also Vanicek v. Comm'r*, 85 TC 731, 742-43 (1985).  There must, however, be sufficient evidence in the record to make the estimate reasonable.  *Williams v. United States*, 245 F2d 559,

560 (5th Cir 1957). Any estimates bear heavily against taxpayers whose inexactitude is of their own making.[6] Here, Plaintiffs failed to provide the court with any specificity as to evidence that could have been used to determine an estimate under the *Cohan* rule. Therefore, $519,991 of Plaintiffs' 2015 COGS expenses should be disallowed in accordance with Warren's adjustment.

h.      Employee benefits

In 2014, Plaintiffs deducted $8,455 for employee benefits on their Schedule C. Plaintiffs offered no evidence explaining or substantiating this deduction and thus, failed to meet their burden. Therefore, Plaintiffs' employee benefit deduction is disallowed in its entirety.

In 2015, Plaintiffs deducted $8,636 in employee benefits on their Schedule C. Warren disallowed the amount in its entirety at audit because taxpayers are not entitled to deduct their personal medical expenses on Schedule C, a form for reporting profit or loss from business. In the absence of any evidence indicating that Plaintiffs' deduction was for employee benefits, the court disallows Plaintiffs' adjustment in its entirety as Plaintiffs failed to meet the burden of proof.

i.      Office

In 2014, Plaintiffs deducted $4,745 for office expenses on their Schedule C. Plaintiffs offered no evidence explaining or substantiating this decision. Therefore, Plaintiffs failed to meet their burden and their office deduction is disallowed in its entirety.

///

///

///

---

[6] The amounts for certain items, such as rocks, could potentially have been estimated under the *Cohan* doctrine. During trial, the court admonished the parties for failing to provide any basis for the court to determine an estimate.

In 2015, Plaintiffs claimed $5,837 in office expenses on their Schedule C. Warren reduced the amount by $5,288 because receipts from Costco appeared to be personal expenses. Plaintiffs did not challenge this item at trial. Thus, the court is persuaded by Warren's testimony and accordingly disallows $5,288 of Plaintiffs' office expense deduction.

### j. 2014 wages

Plaintiffs deducted $120,778 in wages on their 2014 Schedule C. Defendant did not reduce Plaintiffs' wage deduction during the audit, conference, or in its original answer. Defendant did not assert that a reduction to wages was sought until a few days before trial when it filed its amended answer; after the deadline to submit exhibits. Generally, the burden is on the taxpayer to prove the amount of their deductions, however under these circumstances, the court finds that Defendant has the burden of proof as the proponent on the issue of wages. *See* ORS 305.427 ("The burden of proof shall fall upon the party seeking affirmative relief"); *see also Donohoe v. Dept. of Rev.*, TC-MD 150521N, WL 4446635 at *3 (Or Tax M Div, Aug 23, 2016) (Because the department raised an issue for the first time at trial, it bore the burden of proof on that issue).

Evidence was presented in substantiation of Plaintiffs' payments for insurance; that evidence also showed an "audited" amount of wages. Although the evidence does not provide a complete picture of Plaintiffs' wages paid, it is persuasive in demonstrating that substantial wages were in fact paid. Defendant did not submit a full copy of Plaintiffs' ledger showing that wages were or were not listed and offered no testimony about wages paid during the 2014 tax year. Therefore, the court finds that Defendant has not met its burden of proof. Consequently, Plaintiffs' deduction of $120,778 in wages is allowed for the 2014 tax year.

///

k.    2015 wages

In 2015, Plaintiffs claimed a combined total deduction of $100,110 in wages on their two Schedule Cs.  Defendant did not make adjustments during the audit.  At trial Defendant argued to disallow all the wages for lack of substantiation.[7]  Plaintiffs provided a general ledger, which showed wage liabilities, including federal and state payroll taxes, and a listing of all the individual payments, payees, and check numbers. (Ex D at 1573, 1581.)  Defendant offered no substantive explanation of why the wage deduction should be denied, while Plaintiffs offered evidence in support of their claim.  Plaintiffs met their burden of proof and therefore, their 2015 deduction for wages should be allowed in full.

l.    2014 and 2015 Schedule E adjustments

During the tax years in issue Kacy owned a home located on Regan Hill in Estacada.  She obtained a loan in her maiden name and leased the property.  The tenants signed a contract to rent the property at $1,400 per month in 2008.  (Ex E at 1877-80.)  The property had a mortgage with Nationstar Bank and payments were issued from Edgefield Homes' bank account.  (*See, e.g.*, Ex D at 1164.)  Plaintiffs did not include rental income or expenses, such as mortgage interest for the property, on their 2014 or 2015 tax returns.

Defendant made two adjustments to Plaintiffs' 2014 Schedule E: Defendant added $18,000 to income from Kacy's rental property and increased a deduction for interest expenses in the amount of $6,040.  Plaintiffs did not challenge these adjustments at trial and Kacy admitted that Plaintiffs' tax return did not include income and expenses from her rental property.  Thus, Defendant's adjustments are sustained.

///

---

[7] Defendant's Amended Answer erroneously uses the figure $110,110.  (Am Ans at 7.)

Defendant made two adjustments for Plaintiffs' 2015 Schedule E: Defendant added $18,000 in income from Kacy's rental property and increased a deduction for interest expense in the amount of $4,881. Plaintiffs did not challenge these adjustments at trial. Thus, Defendant's adjustments are sustained.

> m.      2014 and 2015 net operating losses (NOLs)

Defendant disallowed Plaintiffs' 2014 NOL of $238,441. Warren testified that the NOL had been settled and disallowed during the 2014 audit. Plaintiffs did not challenge this adjustment at trial. Therefore, Defendant's adjustment is sustained.

Plaintiffs claimed a prior year net operating loss in 2015 of $238,441. Defendant denied the loss in its entirety based on a prior year decisions/stipulation. Plaintiffs did not challenge this adjustment at trial, and thus, it is sustained.

> n.      2014 Schedule A adjustments

Defendant made three adjustments to Plaintiffs' Schedule A. First, Defendant disallowed Plaintiffs' $9,173 deduction for medical and dental expenses in its entirety on the basis that IRC section 213 allows taxpayers to deduct only the part of their medical and dental expense that exceeds ten percent of their adjusted gross income (AGI).[8] *See* IRC § 213. Considering the other adjustments to Plaintiffs' income and expenses, Plaintiffs' medical and dental expenses did not exceed ten percent off their AGI.

Defendant's second Schedule A adjustment is the elimination of a $17,596 deduction for real estate taxes paid. IRC section 63 phases out itemized deductions when a taxpayer's AGI exceeds $305,050. Based on the other adjustments included in this Decision, Defendant must recalculate Plaintiffs' AGI to determine whether the revised AGI exceeds the limitation.

---

[8] Ten percent was the limit during 2014, however, that limit has since changed and is currently 7.5 percent.

Defendant's third Schedule A adjustment is for home mortgage interest. Defendant reduced Plaintiffs' deduction from $10,611 to $4,570 because $6,041 in interest was moved and included on Schedule E, a form for reporting supplemental income and loss from rental real estate, among other things. Plaintiffs did not present evidence on this adjustment. Therefore, the adjustment is sustained.

### o.    2015 Schedule A adjustments

Plaintiffs claimed medical and dental expenses on their 2015 Schedule A in the amount of $10,848. Defendant denied the deduction because after other adjustments, Plaintiffs' medical expenses did not exceed ten percent of their AGI. In light of the adjustments ordered here, Defendant is instructed to recalculate Plaintiffs' AGI to verify whether this adjustment should be sustained.

### p.    Earned income credit (EIC)

Defendant denied Plaintiffs' 2015 deduction for EIC, in the amount of $289, on the basis that adjustments to their income rendered them no-longer-qualified for the credit under IRC section 32 and ORS 315.266.[9] Based on the other adjustments compelled by this Decision, Defendant must recalculate Plaintiffs' AGI to determine whether the revised AGI exceeds the limitation.

///

///

[9] IRC section 32(a)(1) provides: "In the case of an eligible individual, there shall be allowed as a credit against the tax imposed by this subtitled for the taxable year an amount equal to the credit percentage of so much of the taxpayer's earned income for the taxable year as does not exceed the earned income amount. ORS 315.266(1)(a) provides: "In addition to any other credit available for purposes of ORS chapter 316, an eligible resident individual shall be allowed a credit against the tax otherwise due under ORS chapter 316 for the tax year in an amount equal to nine percent of the earned income credit allowable to the individual for the same tax year under section 32 of the Internal Revenue Code."

q.   Taxes and license expenses

Plaintiffs deducted $34,924 in taxes and license expenses on their 2015 Schedule C. Warren allowed $22,365 after deducting $8,000 in property taxes for Plaintiffs' Nelson Road property, which she moved to Plaintiffs' Schedule A because no substantiation was given for the additional taxes. The reduction for Plaintiffs' residential property taxes is proper; however, Warren also appears to reduce the taxes paid by $3,100 for "possible future development." (Ex D at 1871.)

Warren's reduction for possible future development exemplifies the challenges imposed by Plaintiffs' use of the cash method of accounting. Based on the "duty of consistency[,]" if a taxpayer uses one method of accounting and the taxing agency has acquiesced, which it has in this case, the parties (Defendant) may not then pick and choose a different accounting method. *Ashman v. Comm'r*, 75 TCM (CCH) 2160, 2161 (1998), 1998 WL 188936 at * (US Tax Ct). Under the cash method of accounting, the court finds that all taxes paid by Plaintiffs, other than those for the Nelson Road property, should be allowed as a deduction. Thus, Plaintiffs are allowed a deduction of $25,465.

r.   Utilities

In 2015, Plaintiffs claimed $9,515 in utilities expenses on their Schedule C. Warren reduced that amount at audit by $1,255 because it was based on bills for the Nelson Road property. Plaintiffs did not challenge this item at trial. Therefore, Plaintiffs are allowed $8,260 as a deduction for utilities.

///

///

///

s.      Capital gains

Defendant added $22,425 in capital gains receipts based on the 2015 sale of property located on Southeast Reagan Hill Loop.  Plaintiffs did not challenge this item at trial.  Thus, Defendant's adjustments are sustained.

t.      Mortgage interest

Plaintiffs claimed mortgage interest in amount of $9,344.  Warren adjusted this figure down to $4,461 for 2015 and moved the remining interest to Schedule E.  This adjustment is sustained.

u.      Exemption credit

Warren denied Plaintiffs' 2015 exemption credit by $970 because their AGI exceeded $200,000.  Defendant is instructed to recalculate Plaintiffs' AGI following the adjustments made by this Decision to verify whether this adjustment should be sustained.

D.      *Costs and Disbursements*

Plaintiffs filed a request for costs and disbursements on April 13, 2022.  Magistrates have discretionary authority to award a prevailing party's costs and disbursements "as in equity suits in the circuit court."  ORS 305.490(3); *see also Wihtol v. Dept. of Rev.*, 21 OTR 260, 267-68 (2013).  Tax Court Rule (TCR) 68 A(2) provides for an award of "[c]osts and disbursements[,]" which are defined as:

> "reasonable and necessary expenses incurred in the prosecution or defense of an action, other than for legal services, and include the filing fee; fees of officers; the statutory fees for witnesses under ORS 305.492; the expense of publication of summonses or notices, and the postage where the same are served by mail; the expense of copying of any public record, book, or document admitted into evidence at trial; * * * and any other expense specifically allowed by agreement, by these rules, or by any other rule or statute."

Defendant did not file an objection to Plaintiffs' request for costs and disbursements.

However, because a significant majority of the adjustments were in favor of Defendant, the court finds that Plaintiffs are not the prevailing party in this appeal. Plaintiffs' request for costs and disbursements is denied.

## III. CONCLUSION

Upon careful consideration, the court finds that Defendant's audit adjustments were made in good faith. Plaintiffs are granted the adjustments as discussed above. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant issued its Notices of Assessment in good faith.

IT IS FURTHER DECIDED that Plaintiffs' 2014 tax return be adjusted in accordance with the corresponding sections of this Decision.

IT IS FURTHER DECIDED that Plaintiffs' 2015 tax return be adjusted in accordance with the corresponding sections of this Decision.

IT IS FURTHER DECIDED that each party must bear its own costs.

Dated this _____ day of September, 2023.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on September 27, 2023.*